RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 17-1727

ROY C. BRADLEY, SR.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:14-cr-20216-4—Thomas L. Ludington, District Judge.

Argued:  December 6, 2018

Decided and Filed:  March 1, 2019

Before:  MOORE, CLAY, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Mark A. Satawa, SATAWA LAW, PLLC, Southfield, Michigan, for Appellant.
Sheldon N. Light, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.
**ON BRIEF:**  Mark A. Satawa, SATAWA LAW, PLLC, Southfield, Michigan, for Appellant.
Janet Parker, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  Roy C. Bradley, Sr. appeals his conviction
for conspiring to defraud the United States, in violation of 18 U.S.C. § 371.  Bradley worked as
the general contractor on Steven Ingersoll's project converting an old church in Bay City,

Michigan into a new charter school called Bay City Academy (BCA).  Ingersoll had previously misappropriated state funding that had been destined for a charter school he already ran, Grand Traverse Academy (GTA), and used the funding for the new charter school project to cover his tracks.  At trial, Bradley was shown to have conducted a series of fraudulent transfers of the newly misappropriated money, failed to account for the resulting sizeable deposits into his accounts in his 2011 tax filing and thus underpaid his taxes, and failed to file W-2s reporting his BCA employees' wages to the IRS and to provide them with Form 1099s.  Bradley argues that his conviction should be overturned for three reasons:  (1) the testimony that he underpaid his taxes in 2011 constituted a prejudicial constructive amendment or variance to the indictment, (2) the government made improper arguments during its opening statement and rebuttal, and (3) the district court improperly refused to instruct the jury on a lesser-included offense. We **AFFIRM** Bradley's conviction.

## I.  BACKGROUND

Steven Ingersoll was an optometrist in Bay City, Michigan.  (Bradley PSR at 5).  He was also the sole owner of Smart Schools Management (SSM) and Smart Schools, Inc. (SSI), two entities created to operate public charter schools in Michigan.  R. 393 (Tr. at 39, 50) (Page ID #8472, 8483); R. 394 (Tr. at 11) (Page ID #8579); R. 396 (Tr. at 164–65) (Page ID #8903–04). To run public charter schools, the State of Michigan first issues funding to authorizing agencies. Michigan gave funding to Lake Superior State University, an authorizing agency, which then deposited those funds into SSM's account, managed by Ingersoll.  R. 396 (Tr. at 165) (Page ID #8904).  With these funds, Ingersoll founded GTA, a charter school in Traverse City, Michigan, in 1999.  R. 393 (Tr. at 52) (Page ID #8485).  Ingersoll proceeded to misappropriate funding designated for GTA, making millions of dollars in unauthorized withdrawals and doctoring the books to hide the evidence.  R. 388 (Tr. at 124) (Page ID #7718); R. 389 (Tr. at 75) (Page ID #7839).

In April 2010, Ingersoll sought to expand his charter-school business by purchasing a building that had formerly been used as a church in Bay City, Michigan for $270,000.  R. 396 (Tr. at 154) (Page ID #8895).  Ingersoll planned to renovate the building to create BCA, a new charter school.  R. 396 (Tr. at 157–58) (Page ID #8896–97).  Ingersoll hired Bradley as the

general contractor to oversee the renovations.  R. 396 (Tr. at 156–57) (Page ID #8893–96); R. 397 (Tr. at 51–52) (Page ID #8961–62).  Ingersoll improperly used state funds issued to GTA for the construction of the new charter school, BCA.  R. 393 (Tr. at 66–67) (Page ID #8499–8500).  Through another one of his companies, Madison Arts, LLC, Ingersoll took out a $1.8 million construction line of credit loan from Chemical Bank to further fund the BCA project.  R. 396 (Tr. at 154) (Page ID #8893); R. 397 (Tr. at 156) (Page ID #8960).

Ingersoll then misappropriated funding from the construction loan.  Ingersoll, his wife Deborah Ingersoll, his son Gayle Ingersoll, Bradley, and Bradley's wife Tammy Bradley together completed a series of financial transactions transferring Chemical Bank loan money through their own accounts and eventually into Ingersoll's personal account.  From there, Ingersoll reimbursed some of the money he had earlier improperly withdrawn from GTA for personal use.

For example, on February 7, 2011, Ingersoll and Bradley obtained a $508,000 draw on the Chemical Bank loan.  R. 397 (Tr. at 50–51, 57) (Page ID #896–61, 8967).  Ingersoll then transferred $400,000 of that to Bradley's account.  R. 393 (Tr. at 89–90) (Page ID #8522–23).  Three days later, Bradley wrote a check for $200,000 which was deposited into Gayle Ingersoll's account on February 10, 2011.  R. 393 (Tr. at 72–75) (Page ID #8505–08).  That same day, Gayle Ingersoll wrote a check for the same amount which was deposited into Steven and Deborah Ingersoll's personal account.  R. 393 (Tr. at 76) (Page ID #8509); R. 392 (Tr. at 166) (Page ID #8426).  In May 2011, the same actors completed a similar series of transactions routing $30,000 to Steven Ingersoll, who used the funds to purchase real estate.  R. 392 (Tr. at 170–71) (Page ID #8430–31); R. 393 (Tr. at 104–06) (Page ID #8537–39).

In June 2011, over the course of two days, another similar series of transfers took place. Ingersoll and Bradley initiated a $704,000 draw on the Chemical Bank line of credit.  R. 397 (Tr. 68–72) (Page ID #8978–82).  Ingersoll then transferred that money to Bradley's construction company account.  R. 393 (Tr. at 106) (Page ID #8539); R. 397 (Tr. at 73–74) (Page ID #8983). Next, Tammy Bradley transferred that amount into an account associated with Gayle Ingersoll. R. 393 (Tr. at 77, 79, 106) (Page ID #8510, 8512, 8539).  Gayle Ingersoll then transferred the same amount into Steven and Deborah Ingersoll's personal account.  R. 393 (Tr. at 86) (Page ID

#8519); R. 389 (Tr. at 85–86) (Page ID #7849–50).  Steven Ingersoll then moved $700,000 to his SSI account, then to his SSM account, and lastly to GTA's account on the final day of the school's fiscal year.  R. 393 (Tr. 31–33) (Page ID #8464–66); R. 389 (Tr. at 88) (Page ID #7852).

Meanwhile, Bradley hired indigent employees to work at the BCA construction site and paid them around $250 to $350 in cash per week for five or six full days of work.  R. 394 (Tr. at 78, 85) (Page ID #8646, 8653); R. 396 (Tr. at 119, 121) (Page ID #8858, 8860).  He did not pay FICA or FUTA taxes on the wages and did not file W-2s or issue Form 1099s to the employees.  R. 394 (Tr. at 79) (Page ID #8647); R. 396 (Tr. at 95) (Page ID #8834).

Bradley and his wife Tammy worked with an employee of H&R Block to file their 2011 taxes, but failed to provide documentation to support their income claims.  R. 396 (Tr. at 22, 29) (Page ID #8761, 8768).  They repeatedly changed the amounts of income they claimed by large margins, making one significant increase soon after Gayle Ingersoll was interviewed by federal agents as part of the investigation of the present case.  R. 396 (Tr. at 31–32) (Page ID #8770–71); R. 396 (Tr. at 41–43) (Page ID #8780–82); R. 389 (Tr. at 86) (Page ID #7680).  At trial, an IRS agent named Michael Wisniewski testified that even after Bradley and Tammy adjusted their reported income, they still underreported their actual income earned in 2011 and accordingly underpaid their tax obligation.  R. 388 (Tr. at 32–34) (Page ID #7626–28).

Bradley was indicted in the United States District Court for the Eastern District of Michigan on April 9, 2014.  R. 3 (Indictment at 14) (Page ID #33).  He was charged with two counts:  Count 1, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349, and Count 2, Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371.  R. 3 (Indictment at 1, 6) (Page ID #20, 25).  Steven Ingersoll and Gayle Ingersoll were charged co-conspirators in Count 2.  *Id.*  The indictment included additional charges against Tammy Bradley, Deborah Ingersoll, and Steven Ingersoll.  *Id.*  On April 23, 2014 the government filed a Superseding Indictment, which added forfeiture allegations.  R. 24 (Superseding Indictment) (Page ID #75).

Prior to trial, Bradley submitted a motion in limine requesting that the jury be instructed on the proposed lesser-included offenses of conspiracy to fail to file W-2s or issue 1099s, in violation of 26 U.S.C. §§ 7203 and 7204, respectively. R. 114 (Bradley's Request for Lessor [sic] Included Offense as to Count Two 18 USC [sic] § 371 at 1) (Page ID #776). The district court declined to rule on this motion prior to trial. R. 147 (Order Denying Mot. for Peremptory Challenges and Addressing Mots. in Limine at 6) (Page ID #1078).

Bradley went to trial on February 10, 2015. R. 391 (Voir Dire Tr.). Bradley was tried jointly with his wife Tammy as well as Steven, Deborah, and Gayle Ingersoll. At trial, the government offered the testimony of Agent Michael Wisniewski of the IRS, who began to testify about the Bradleys' underreporting and underpaying of their 2011 taxes on Friday, February 27, 2015. Bradley objected to this testimony, arguing that it was outside the scope of the indictment, which did not list Bradley's underpayment of his taxes as an overt act in furtherance of the conspiracy to defraud the United States. R. 399 (Tr. at 98–104) (Page ID #9338–44). The district court stated that it needed more time to review the underlying law, and prevented Wisniewski from further testifying on the subject that day. *Id*. at 104 (Page ID #9344). The government provided Bradley with additional information about Wisniewski's intended testimony in the days that followed. R. 186 (Tr. at 16) (Page ID #1574). When Wisniewski resumed this testimony on Tuesday, March 3, 2015, the court ruled that it reasonably fell within the scope of the conspiracy as charged in Count 2. *Id*. at 13–24 (Page ID #1571–82).

On February 23, 2015, Bradley filed "Proposed Jury Instructions for Lessor [sic] Included Offense as to Count Two." R. 142 (Bradley's Proposed Jury Instructions) (Page ID #1033). This filing failed to propose actual jury instructions, but rather merely reiterated arguments for the inclusion of instructions on the proposed lesser-included offenses discussed in his earlier motion in limine. On March 6, 2015, Bradley was acquitted of Count 1 in a Judgment of Acquittal. R. 152 (Order Granting in Part and Denying in Part Mots. for Acquittal) (Page ID #1247). The district court did not instruct on a lesser-included offense in its final jury instructions, but did not explain why in the written record. R. 176 (Jury Instructions at 7) (Page ID #1376). On March 10, 2015 the jury returned a verdict finding Bradley guilty of Count 2. R. 156 (Verdict Form) (Page ID #1253). On March 24, 2015, Bradley joined Steven Ingersoll's

Motion for Judgment of Acquittal and Motion for New Trial. R. 171 (Def. Bradley's Joinder in Dr. Ingersoll's Mot. for New Trial and for J. of Acquittal) (Page ID #1307). The district court denied the motions for judgment of acquittal and for a new trial. R. 205 (Order Denying Mots. for New Trial) (Page ID #2515). Judgment was entered against Bradley, and he received a sentence of 18 months in custody followed by two years of supervised release. R. 374 (J. in a Criminal Case at 1–3) (Page ID #7125–27). Bradley timely filed his Notice of Appeal. R. 375 (Notice of Appeal) (Page ID #7132).

## II. DISCUSSION

### A. Constructive Amendment or Variance of Count 2

Bradley argues that his role in the conspiracy, as alleged in the overt-acts section of the indictment, "has solely and repeatedly been limited to that he paid his construction company's workers in cash and did not report the wages that he paid to his company's workers via Form 1099s or W-2s." R. 150 (Def.'s Mem. of Law in Supp. of Arg. to Exclude the Government from Introducing Evid. Regarding the Filing of Inaccurate Tax Returns at 6) (Page ID #1233). Bradley claims that Wisniewski's testimony about Bradley's underreporting and underpayment of his 2011 taxes constituted a prejudicial constructive amendment or variance to the indictment.

If the defendant raises a specific objection to a constructive amendment or variance at trial, we review de novo. *United States v. Prince*, 214 F.3d 740, 756 (6th Cir. 2000). Where no such objection is made in the district court, we review for plain error. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008). Bradley claims that he objected to the constructive amendment or variance at trial and renewed that objection in his Motion for New Trial. Appellant Br. at 19. The government argues that he did not properly object before the district court, essentially because he did not use the language of "constructive amendment" or "variance." Rather, he objected to Wisniewski's testimony as "not relevant because the allegation in the indictment was that he paid his employees in cash," as "disjoinder," and as a Rule 16 discovery violation.[1] R. 399 (Tr. at 98–105) (Page ID #9338–9345); Gov't Br. at 16–17.

---

[1]Because Bradley did not make this argument in the language of constructive amendments and variances before the district court, the district court based its decision to allow this testimony on the sufficiency and scope of

We need not decide whether the objection was effectively lodged and thus which standard of review applies because the district court's decision would survive either level of review.

"An indictment may be the subject of an actual amendment, a constructive amendment, or a variance." *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). To assess whether there has been a constructive amendment or variance to the indictment, we "review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury." *Kuehne*, 547 F.3d at 683–84. The defendant bears the burden of proof in demonstrating that a variance or constructive amendment occurred. *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006).

There is a constructive amendment "when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)). A constructive amendment occurs "where both the jury instructions and the evidence at trial vary from the indictment to broaden the basis for conviction." *Kuehne*, 547 F.3d at 685. Prejudice requiring reversal of the conviction always results when there is a constructive amendment "because [constructive amendments] infringe on the Fifth Amendment's grand jury guarantee." *Hynes*, 467 F.3d at 962 (internal citations and quotations omitted).

Variances differ from constructive amendments. They "occur[ ] when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Prince*, 214 F.3d at 756–57 (internal quotation marks omitted). Unlike constructive amendments, they do not require a divergence between the indictment and the jury instructions. *Martinez*, 430 F.3d at 338. When a defendant demonstrates that a variance occurred, we reverse only if the "defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent

---

the indictment. Although the precise legal tests used are different, the flavor of the analysis is the same. *See* R. 205 (Order Denying Mots. for New Trial at 13–15) (Page ID #2527–29).

prosecutions." *Hynes*, 467 F.3d at 962 (quoting *United States v. Barrow*, 118 F.3d 482, 488–89 (6th Cir. 1997)).

The presentation of evidence not explicitly mentioned in the indictment does not necessarily constitute a constructive amendment or material variance. In *Kuehne*, "the government offered evidence of more firearms than were listed in the indictment." 547 F.3d at 686. Yet because "the jury was instructed regarding the specific weapons charged in the indictment and that it had to find those weapons were involved in the offenses beyond a reasonable doubt," and there was no "discrepancy between the counts as listed in the indictment and the instructions regarding the necessary elements for conviction on those counts," we held that there had been neither a constructive amendment nor a material variance. *Id*. We reasoned that "[t]he presentation of additional evidence to substantiate charged offenses [ ] does not constitute facts materially different from those charged in the indictment." *Id*. In other cases, we have concluded that neither a constructive amendment nor a variance occurred when proof offered at trial went beyond conduct alleged in the indictment. *See, e.g.*, *United States v. Rashid*, 274 F.3d 407, 413–15 (6th Cir. 2001) (no constructive amendment or variance when, at trial, the government presented evidence about conduct occurring in 1988, but the indictment referred only to conduct of that nature beginning in 1992); *Hynes*, 467 F.3d at 965 (no constructive amendment or variance when, at trial, the government argued that the defendant had made two false statements before the grand jury when the indictment alleged only that the defendant had made one).

Turning to Bradley's case, we first note that Bradley incorrectly characterizes the indictment's description of his participation in the conspiracy. The indictment does not limit his participation to paying his workers in cash and failing to report their pay to the relevant government agencies. Count 2 also alleges that "Steven Ingersoll, Roy Bradley and Gayle Ingersoll, and others, engaged in a series of transactions to conceal that part of the proceeds of a construction loan . . . were diverted away from the construction project and converted into personal income for Steven Ingersoll." R. 24 (Superseding Indictment at 6–7) (Page ID #80–81). Bradley's alleged participation in the conspiracy therefore went well beyond his failure to issue Form 1099s and W-2s. The overt-acts section of the indictment details his specific involvement

in the series of fraudulent transfers. *Id*. at 7–10 (Page ID #81–84). We consider the full scope of the indictment in analyzing whether a variance or constructive amendment occurred, not only the sections that Bradley chooses to acknowledge. *See generally Kuehne*, 547 F.3d at 683–84.

Here, the substantive jury instructions on Count 2 informed the jury that they must find "[f]irst, that two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, by dishonest means." R. 176 (Jury Instructions at 7) (Page ID #1376). The jury then had to find that the "defendant knowingly and voluntarily joined the conspiracy" and that "a member of the conspiracy *did one of the overt acts described in the indictment* for the purpose of advancing or helping the conspiracy," thereby specifically incorporating the overt acts listed in the indictment. *Id*. at 8 (Page ID #1377) (emphasis added).

There was not a constructive amendment because Count 2 as described in the jury instructions mirrors the charge in the indictment and directly incorporates the overt-acts section of the indictment by reference. *Id*. at 7–9 (Page ID #1376–78). Where the jury instructions do not differ from the crime charged in the indictment, there is no constructive amendment. *Kuehne*, 547 F.3d at 684.

Nor did the introduction of evidence about Bradley's improper tax filings constitute a material variance. It is true that the superseding indictment lists several of Bradley's transactions in the chain of fraudulent transfers and his failure to issue Form 1099s or W-2s to his employees as overt acts in furtherance of the conspiracy, but does not list Bradley's failure adequately to report or pay his 2011 taxes as an overt act. R. 24 (Superseding Indictment at 7–10) (Page ID #81–84). Evidence of his improper 2011 tax filing was admitted at trial. However, as in *Kuehne*, this merely constituted a "presentation of additional evidence to substantiate charged offenses," which did not include "facts materially different from those charged in the indictment." 547 F.3d at 686. Bradley's series of fraudulent transactions involving large sums, chronicled in the indictment, had tax consequences—income that should have been reported. R. 24 (Superseding Indictment at 7–10) (Page ID #81–84). Wisniewski testified about how proper reporting of that income would have impacted Bradley's tax burden. The facts presented at trial were not "materially different" from those charged in the indictment.

Even if the inclusion of Wisniewski's disputed testimony did constitute a variance, it would not entitle Bradley to a reversal of his conviction because Bradley has not "show[n] prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Hynes*, 467 F.3d at 962 (quoting *Barrow*, 118 F.3d 482). Bradley does not raise arguments about the sufficiency of the indictment to bar subsequent prosecutions. He argues that had he known that Wisniewski would testify about his improper tax filings, he would have hired a CPA to analyze his tax returns and counter Wisniewski's testimony. R. 171 (Def.'s Joinder in Dr. Ingersoll's Mot. for New Trial and for J. of Acquittal at 13) (Page ID #1319). Bradley's argument fails for several reasons.

First, Bradley was not blind-sided by Wisniewski's testimony. The indictment must inform the defendant of the charges against him, but it need not inform him point-by-point of the manner in which the government will prove its case. *See United States v. Atisha*, 804 F.2d 920, 927 (6th Cir. 1986) (commenting that "there is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy") (quotation omitted); *see also Prince,* 214 F.3d at 758 ("reject[ing] [the] argument that the due process right to clear notice of criminal charges includes notice of the exact method by which the criminal actions were alleged to have been committed"). It is true that the overt acts section of the indictment specifically mentions Gayle and Steven Ingersoll's faulty 2011 tax filings, but does not mention Bradley's, the subject of the challenged testimony. R. 24 (Superseding Indictment at 10) (Page ID #84). But, as the district court noted, there were "multiple assertions in the overt acts of transactions that he would have been involved in [that] would have been taxable to him."**[2]** R. 399 (Tr. at 102) (Page ID #9342).

Additional safeguards ensured the trial's fairness and protected Bradley's ability to defend himself. On Friday, February 27, 2015, when Agent Wisniewski began to testify about Bradley's 2011 tax filing, Bradley objected to the testimony. *Id*. at 98 (Page ID #9338). The district court halted this line of testimony in an abundance of caution, stating that it desired more time to decide whether to allow the testimony. *Id*. at 105 (Page ID #9345). Wisniewski did not

---

**[2]**The district court also made a similar observation at a hearing prior to the trial. *See* R. 63 (Tr. at 15) (Page ID #322).

resume his testimony on this topic until Tuesday, March 3, 2015. R. 186 (Tr. at 5) (Page ID #1563). The government provided Bradley's counsel with additional information about Wisniewski's intended testimony during the intervening days. *Id.* at 16 (Page ID #1574). When Wisniewski began to testify on this subject again on Tuesday, the parties again discussed the reasons for Bradley's earlier objection, but the court determined that the testimony was proper. *Id.* at 17 (Page ID #1575). Bradley had adequate notice of Wisniewski's testimony.

Bradley also "had the opportunity to cross-examine Agent [Wisniewski] and to respond to the government's evidence . . . during closing arguments." *Hynes*, 467 F.3d at 964. The tax calculations that Wisniewski discussed on the stand were based on previously disclosed financial information in the possession of the defense. R. 388 (Tr. at 56) (Page ID #7650). Bradley's counsel did indeed cross-examine Wisniewski. *Id.* at 58 (Page ID #7652).

Third, the theory of Bradley's defense was that Bradley had been in over his head in dealing with the finances surrounding the construction project and therefore did not knowingly become a part of the conspiracy to defraud the United States. *See* R. 400 (Tr. at 162) (Page ID #9571; R. 151 (Mem. in Supp. of Admitting Def. Ex. 4 at 3–4) (Page ID #1243–44). If anything, Wisniewski's testimony about Bradley's failure to report certain sources of income from the project supports this defense; it certainly does not undermine it. *See United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (finding no reversible error when a variance did not substantially affect the defendant's chosen defense).

As part of his variance and constructive-amendment argument, Bradley also asserts that (1) if he himself was not proven to have committed an overt act in furtherance of the conspiracy, he could not be convicted, and (2) if the overt act he committed was not illegal, he could not be convicted of the conspiracy charge. *See* Appellant Br. at 46–49. Both legal assertions are incorrect. First, "[a]ll that must be proved for a conviction is that '*one* of the conspirators . . . knowingly committed at least one overt act charged in the indictment . . . [and] that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.'" *United States v. Younes*, 194 F. App'x 302, 309 (6th Cir. 2006) (quoting *United States v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996)) (emphasis added). There is no requirement that the defendant himself commit the overt act. Second, the overt act in furtherance of the conspiracy

"need not be itself a crime."  *Id*. at 308 (citing *Braverman v. United States*, 317 U.S. 49, 53 (1942)).

**B.  Prosecutorial Misconduct**

Bradley challenges two specific metaphors used by the government at trial:  one during its opening statement and one during its rebuttal.  We normally review de novo "the question of whether prosecutorial misconduct requires reversal." *United States v. Stover*, 474 F.3d 904, 914 (6th Cir. 2007).  However, if the defendant did not preserve the specific objections at trial, we review for plain error. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008).  In order to preserve a claim of error, the objecting party must "inform[] the court . . . of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." FED. R. CRIM. P. 51(b).  Deborah Ingersoll's counsel objected to a metaphor that the government used in its opening statement; Bradley's counsel did not.  Appellant Br. at 29; R. 392 (Tr. at 31–36) (Page ID #8291–8296).  Bradley did not contemporaneously object to the statements made during rebuttal.[3]  Appellant Br. at 32.  We therefore review for plain error.  We may find plain error if there is "(1) error, (2) that is plain, (3) that affects substantial rights." *United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005).  We reverse only forfeited errors that "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Id*.

In evaluating alleged prosecutorial misconduct, we first determine whether the challenged statements made by the prosecutor were improper. *United States v. Barnett*, 398 F.3d 516, 522–23 (6th Cir. 2005).  If the statements were improper, we then determine whether they constituted flagrant misconduct. *Henry*, 545 F.3d at 376.  To determine whether a prosecutor's remarks constituted flagrant misconduct, we assess "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir.

---

[3]Bradley untimely objected below by joining Ingersoll's Motion for Judgment of Acquittal and Motion for New Trial.  Appellant Br. at 32; R. 192 (Def.'s Joinder in Dr. Ingersoll's Suppl./Superseding Mot. for J. of Acquittal and Mot. for New Trial) (Page ID #2128).

2001)).  Examples of improper insinuations and assertions include "express[ing] to the jury . . . personal knowledge of the guilt of the accused" and "bring[ing] to the jury's attention purported facts that are not in evidence and are prejudicial."  *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  We "afford 'wide latitude to a prosecutor during closing argument.'"  *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) (quoting *Henry*, 545 F.3d at 377).

"[E]xceptionally flagrant" prosecutorial misconduct is grounds for reversal, even under a plain-error standard.  *Carter*, 236 F.3d at 783 (6th Cir. 2001).  If the prosecutor's remarks are not flagrant, we reverse a conviction "only 'if proof of the defendant's guilt was not overwhelming, the defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury.'"  *Kuehne*, 547 F.3d at 688 (quoting *Stover*, 474 F.3d at 915).

Bradley specifically challenges two metaphors that the government employed:  (1) a scale metaphor used during its opening statement to explain the presumption of innocence and the burden of proof, and (2) a puzzle metaphor used during its rebuttal to explain proof beyond a reasonable doubt.  The district court concluded that neither metaphor was improper.  R. 205 (Order Denying Mots. for New Trial at 11) (Page ID #2525).  We respectfully disagree with the district court.  Although we conclude that both statements were improper, we find that they did not constitute flagrant prosecutorial misconduct and do not warrant reversal of Bradley's conviction.

## 1.  Scale Metaphor

In its opening statement, the government attempted to explain the presumption of innocence and the way in which the prosecution's and defense's presentations of evidence interacted with that presumption using a scale metaphor.  The government argued that the presumption of innocence is

> a blank sheet.  It's like the white on that easel over there.  It's blank.  It means there is no evidence until it's presented here in court.
>
> That doesn't have any weight.  If you think of the scales of justice, presumption of innocence doesn't mean we start with the scales tipped one way and the government has to tip it the other way.  It means we start even, an empty or balanced situation, and the purpose of the trial is to present the evidence that

> will tip that one way or the other and you, ladies and gentlemen, ultimately decide which way that evidence tips.

R. 392 (Tr. at 8–9) (Page ID #8268–69). Bradley argues that the use of such a metaphor incorrectly implies that if the scale tips ever so slightly in the direction of guilt, conviction is warranted. He argues that the scale metaphor reflects the preponderance-of-the-evidence standard, improper for criminal trials. *See Hodge v. Hurley*, 426 F.3d 368, 379 n.21 (6th Cir. 2005) (discussing prosecutor's likely improper statements in the context of habeas review).

Improper burden shifting by the government violates due process and can be grounds for reversal. *See United States v. Newton*, 389 F.3d 631, 638 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005). In *Henry*, we concluded that the prosecutor improperly "inverted the burden of proof" by stating during its closing argument that if the jurors would not encourage their children to work for the defendant, who was alleged to have led a drug-smuggling scheme, then the proof-beyond-a-reasonable-doubt standard had been satisfied and they should convict. 545 F.3d at 383. However, we did not find reversible plain error because the prosecutor's misconduct was mitigated by the strength of the evidence against Henry, the district court thoroughly instructed the jury on the proper burden of proof, and Henry's counsel had failed to lodge a contemporaneous objection. *Id*. at 384.

We conclude that the scale metaphor employed by the government in its opening statement was improper. It risked leading jurors to believe that if the evidence of guilt was slightly stronger than the evidence of innocence, they should convict. The scale metaphor also incorrectly implies that the defense must present evidence to counterbalance the government's evidence. If one places a weight on the plate on one side of a scale but nothing on the plate on the other side, the scale will collapse to the weighted side. In a criminal trial, however, the government may put forth some evidence, the defense may put forth nothing, and acquittal may still be appropriate.

Although improper, the government's use of the scale metaphor does not constitute flagrant misconduct requiring reversal under the plain-error standard. First, the comments in *Henry* not only more clearly misconstrued the burden of proof than the scale metaphor here, but they also paired that misinformation with the emotion-provoking content of a hypothetical

decision concerning the well-being of the jurors' children. 545 F.3d at 382. Second, here the government used the scale metaphor in only one isolated instance. Third, although the government certainly used the scale metaphor deliberately, its characterization of the presumption of innocence and the burden of proof were not so egregiously flawed as to support an inference that the government meant to mislead the jury. Fourth, Bradley's counsel failed timely to object to the metaphor's use. Fifth, considerable evidence supported Bradley's conviction. Most importantly, any tendency of the metaphor to mislead the jury was countered by the district court's instructions and Bradley's counsel's own response. The district court properly instructed the jury on the burden of proof and the presumption of innocence, correcting any incorrect understandings that the government's opening statement may have planted. Bradley's own counsel also responded at length to this metaphor, arguing that the scales begin tilted toward innocence and that the prosecution must tip them toward guilt over the course of the trial. R. 392 (Tr. at 72–74) (Page ID #8332–8334).

## 2. Puzzle Metaphor

In its rebuttal, the government employed another metaphor to explain the beyond-a-reasonable-doubt standard. The government remarked:

> Now, one last thing I would like to leave you with, in order to sort of illustrate the concept of beyond a reasonable doubt. I think we all have had the experience in our lives of having a jigsaw puzzle where you have the picture on the box, and you go and put together the puzzle and you find that some of the pieces have been scattered over time and aren't in the box and didn't get put back into the puzzle and, you know, maybe the dog chewed up one or whatever, but you have a picture that you've assembled, and maybe it's got some bits and pieces missing, but you know looking at that picture, that that picture is the same puzzle that was on the cover of the box.
>
> That, ladies and gentlemen, I submit to you, is a good example of beyond a reasonable doubt, because there's no case that's beyond all possible doubt. There's no case that's perfect, but everyday [sic], day in and day out, and throughout the history of our country, jurors have been asked to apply that standard, and that says a doubt based on reason and common sense.
>
> And if you can look at the parts of the puzzle that you have and say that the picture, right, using your reason and your common sense, the picture being the indictment, has been assembled before you, you can find the defendants guilty as charged."

R. 400 (Tr. at 173–74) (Page ID #9582–83). The use of this metaphor for the beyond-a-reasonable-doubt standard was also improper. One can easily imagine trying to put together a 1000-piece jigsaw puzzle based on the picture on the box that the puzzle came in. Whether half of the puzzle pieces are missing or only ten of them are missing, one could still piece together enough of the puzzle to be able to recognize that it resembled the picture on the box. Accordingly, jurors could understand the metaphor to describe a far less demanding standard of proof than true proof beyond a reasonable doubt.

However, the use of this metaphor was not flagrant misconduct requiring reversal under the plain-error standard. First, the metaphor is not so flagrantly erroneous as to cause the court to infer that the government intentionally sought to mislead jurors with it. Second, the government used the puzzle metaphor in one isolated instance. Third, significant evidence demonstrated Bradley's guilt. Fourth, Bradley failed timely to object to the puzzle metaphor. Finally, the district court countered the flawed metaphor's impact by thoroughly and repeatedly instructing the jurors on the burden of proof and the beyond-a-reasonable-doubt standard as well as explaining the role of the indictment in criminal proceedings. R. 176 (Jury Instructions at 1, 8) (Page ID #1370, 1377). "[J]urors are presumed to follow the trial court's instructions." *Hynes*, 467 F.3d at 957 (concluding that "any possible confusion . . . was alleviated by the two consistent and correct instructions subsequently given").

Considering the context of the fairness of the trial as a whole, including Bradley's counsel's failure timely to object and the district court's proper curative instructions on the relevant standards, we conclude that the two improper statements do not constitute grounds for reversal under the plain-error standard. *See Boyd*, 640 F.3d at 669.

## C. Instructions on Lesser-Included Offenses

Bradley challenges the district court's failure to instruct the jury on his proposed lesser-included offenses: conspiracy to fail to file W-2s, in violation of 26 U.S.C. § 7203 and 18 U.S.C. § 371, and conspiracy to fail to issue Form 1099s, in violation of 26 U.S.C. § 7204 and 18 U.S.C. § 371. Our standard for what a defendant must show to obtain a lesser-included offense instruction is well established. "A defendant is entitled to an instruction on a lesser-

included offense if: '(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.'" *United States v. Jones*, 403 F.3d 817, 821–22 (6th Cir. 2005) (quoting *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001)).

The second criterion of the lesser-included offense analysis requires us to determine whether "the elements of the lesser offense are identical to part of the elements of the greater offense." *Id.* (quoting *Colon*, 268 F.3d at 373). Bradley was charged and convicted for conspiring to defraud the United States—the proposed greater offense. The elements of conspiracy to defraud the United States that the district court charged to the jury are: (1) "that two or more persons conspired, or agreed, to defraud the United States, or one of its agencies or departments, by dishonest means," (2) that the "defendant knowingly and voluntarily joined the conspiracy," and (3) that "a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy." R. 176 (Jury Instructions at 7–8) (Page ID #1376-77). The elements of the proposed lesser offense of conspiracy to fail to file W-2s would presumably be: "(1) an agreement to [fail to file W-2s]; (2) one or more overt acts in furtherance of th[at] illegal purpose; and (3) the intent to [fail to file W-2s]." *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005). Similarly, the elements of the lesser offense of conspiracy to fail to issue Form 1099s would be "(1) an agreement to [fail to issue Form 1099s]; (2) one or more overt acts in furtherance of th[at] illegal purpose; and (3) the intent to [fail to issue Form 1099s]." *Id.*

In some instances, instructing on a lesser conspiracy within a greater conspiracy is appropriate. *See United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012) (citing *United States v. Boidi*, 568 F.3d 24, 28 (1st Cir. 2009) (Boudin, J.)). In *Boidi*, for example, the First Circuit reasoned that "a vertical 'conspiracy to possess drugs with intent to distribute' can easily be said to be a 'conspiracy to possess drugs' with one added element, namely, that the parties also had a shared aim that the possessed drugs then be distributed." *Boidi*, 568 F.3d at 28. The conspiracy statute contemplated here, 18 U.S.C. § 371, however, differs considerably from the

drug conspiracy statutes contemplated in *Boidi* and *LaPointe*. Section 371 contains no comparable component intent elements that can be easily discerned and disentangled. At first blush, it appears that we cannot simply subtract one element and find ourselves with Bradley's proposed lesser-included offenses remaining. Moreover, a defendant can conspire to defraud the United States in a multitude of ways and need not intend to fail to file W-2s or issue Form 1099s. *Colon*, 268 F.3d at 374; *see also Jones*, 403 F.3d at 822 (defendant arguing that conspiracy to possess equipment and chemicals used to manufacture methamphetamine is a lesser-included offense of conspiracy to manufacture methamphetamine because "some equipment is always necessary for the manufacture of methamphetamine").

However, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995)). After reviewing the record from both the district court and on appeal, we must conclude that Bradley failed sufficiently to develop his lesser-included offense argument and thus forfeited the argument.

In the district court, Bradley submitted a motion in limine requesting that the district court instruct the jury on the lesser-included offenses of conspiracy to violate 26 U.S.C § 7203 and 26 U.S.C. § 7204.[4] R. 114 (Roy C. Bradley's Request for Lessor [sic] Included Offense as to Count Two 18 USC [sic] § 371 at 1, 6) (Page ID #776, 781). He informed the district court that he intended to "ask[ ] for the lessor [sic] included offenses as to Count 2 . . . at the close of trial."[5] *Id*. Bradley renewed this request in his Proposed Jury Instructions, filed February 23, 2015. R. 142 (Def.'s Proposed Jury Instructions for Lessor [sic] Included Offense as to Count

---

[4]Bradley first argued that the relevant lesser-included offenses should be both the substantive crimes of "failure to file W2's [sic] and/or failure to file 1099's [sic], and/or conspiracy to commit those substantive offenses. 26 USC [sic] § 7203 and 26 USC [sic] § 7204." R. 114 (Bradley's Request for Lessor [sic] Included Offense as to Count Two 18 USC [sic] § 371 at 1) (Page ID #776). However, his later statements in the same motion in limine indicated that he sought jury instructions on only conspiracy to commit these substantive crimes. *Id*. at 6 (Page ID #781) ("The Defense is asking for 'conspiracy to commit' violations of 26 [U.S.C.] § 7203 and/or § 7204 . . . as opposed to the substantive offenses themselves.")

[5]In ruling on this motion in limine, the district court concluded that Bradley's "[c]ounsel acknowledged that whether these lesser included charges are merited would depend on the proofs presented at trial and therefore the Court noted that a ruling at this time would be premature." R. 147 (Order Denying Mot. for Peremptory Challenges and Addressing Mots. in Limine at 6) (Page ID #1078).

Two 18 USC [sic] § 371) (Page ID #1033).  However, Bradley failed to include a draft of actual "proposed instructions" for the jury on the lesser offenses, as required by the district court's scheduling order.**6**  R. 34 (Criminal Trial Notice, Scheduling Order, and Order Determining Excludable Delay at 9) (Page ID #116).

Bradley did not engage in the Sixth Circuit's lesser-included offense analysis either before the district court**7** or on appeal.**8**  *See* R. 142 (Bradley's Proposed Jury Instructions for Lessor [sic] Included Offense at 1–3) (Page ID #1035); Appellant Br. at 45–52.  Bradley failed to explain how "the elements of the lesser offense are identical to part of the elements of the greater offense." *Jones*, 403 F.3d at 821–22 (quoting *Colon*, 268 F.3d at 373).  He failed even to break

---

**6**Bradley was an outlier among the defendants with whom he was tried for failing to submit alternate proposed instructions.  The other defendants with whom Bradley was tried submitted proposed language that they requested be added to the court's jury instructions.  *See, e.g.*, R. 140 (Gayle Ingersoll's Proposed Additional Jury Instructions and Objection to Instruction at 2–3) (Page ID #1029–30) (proposing additional language and objecting to specific language in the jury instructions); R. 143 (Steven Ingersoll's Request for Modified Jury Instructions) (Page ID #1037) (suggesting specific changes to the jury instructions).  The government also proposed specific language.  R. 144 (Gov't Comments on Jury Instructions Draft) (Page ID #1046).

Defendant Steven Ingersoll even requested that the court instruct the jury on a lesser-included offense when charging Ingersoll and provided suggested language.  R. 143 (Steven Ingersoll's Request for Modified Jury Instructions at 2) (Page ID #1038).  Bradley's failure to submit drafted language also arguably violated Federal Rule of Criminal Procedure 30, which provides that "[a]ny party may request in writing that the court instruct the jury on the law *as specified in the request*." FED. R. CRIM. P. 30(a) (emphasis added); *see also United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990) (noting the defendant's failure to "propose an alternate instruction").

**7**Bradley came closest to discussing the Sixth Circuit's standard when he asserted that the jury might have a logical basis to find that Bradley had committed "failure to file [W-2s] and/or failure to file [1099s], and/or conspiracy to commit those substantive offenses" but not conspiracy to defraud the United States because it could find that he "had no intent to defraud." R. 142 (Bradley's Proposed Jury Instructions for Lessor [sic] Included Offense at 1–3) (Page ID #1035); R. 114 (Bradley's Request for Lessor [sic] Included Offense as to Count Two 18 USC [sic] § 371 at 6) (Page ID #781).  Although this arguably touches on the fourth criterion, it unacceptably left the district court to add considerable flesh to the bones of his argument.  *See McPherson*, 125 F.3d at 996 (quoting *Citizens Awareness Network*, 59 F.3d at 294).

**8**On appeal, instead of analyzing the criteria that the Sixth Circuit considers to determine whether a lesser-included offense instruction is warranted, Bradley reiterates his contentions that the only overt acts that the indictment mentions Bradley committing are paying the construction workers in cash and failing to report these payments to the IRS or SSA, *see* Appellant Br. at 49, and that paying employees in cash is not unlawful, *see id*. at 47.  As discussed earlier, neither argument defeats a conspiracy charge against him.  Bradley also argues that there was no proof that Bradley's failure to file W-2s or issue Form 1099s "was part of a larger conspiracy to act, in concert [with the other conspirators]," to defraud the United States.  *Id.*  This too is incorrect.  A reasonable jury could have concluded, for example, based on the evidence presented at trial, that Ingersoll, Bradley and the others intended to save as much money as possible on the construction project so that more could be misappropriated, or that failing to make the required filings supported the parties' goal of evading the detection of their scheme.  *See* R. 186 (Tr. at 14) (Page ID #1572) (government arguing that the conspirators "were in agreement to do things in a way where they weren't reporting things on the tax returns").

the lesser and greater offenses down into their component elements to compare. Bradley failed to point to evidence in the record that "would support a conviction on the lesser offense." *Id*. He has pointed to no evidence that shows that Bradley *conspired* with others specifically to fail to file W-2s or issue Form 1099s. He also fails to demonstrate how "the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *Id*. at 822. Bradley first notes the criteria that we consider in deciding whether a lesser-included offense instruction is warranted in his penultimate sentence in his appellate brief.[9] *See* Appellant Br. at 51–52. He did not file a reply brief.

Bradley "leave[s] it to the court to seek out the relevant law, identify the relevant evidence, and develop [his] arguments for [him]." *Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017). The issue of whether a jury should be instructed on conspiracies to fail to make specific tax filings as lesser-included offenses of conspiracy to defraud the United States under 18 U.S.C. § 371 appears to be one of first impression in the Sixth Circuit.[10] It is not our role to fashion new law without the benefits of the adversarial system, in which the parties evaluate the strengths and weaknesses of each other's arguments. *See id*. We conclude that Bradley forfeited his lesser-included offense argument.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** Bradley's conviction.

---

[9]The government does no better, citing only the general standard for when proposed jury instructions should be accepted rather than the standard specific to lesser-included offense instructions. Gov't Br. at 33. The government also fails to break down and compare the elements of the offense of conviction and the proposed lesser-included offenses or to cite the record to demonstrate which elements have been met. *Id*. at 33–36.

[10]The parties cited no Sixth Circuit cases addressing this question. Other circuits have held that conspiracies to violate a variety of federal statutes are not lesser-included offenses of a conspiracy to defraud the United States. *See, e.g., United States v. Southland Corp.*, 760 F.2d 1366, 1381–83 (2d Cir. 1985) (holding that conspiracy to submit fraudulent tax documents in violation of 26 U.S.C. § 7207 is not a lesser-included offense of conspiracy to defraud the United States); *United States v. Thompson*, 814 F.2d 1472, 1477 (10th Cir. 1987) (holding that conspiracy to commit mail fraud is not a lesser-included offense of conspiracy to defraud the United States); *see also United States v. Secor*, 73 F. App'x 554, 562–63 (4th Cir. 2003).