NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0526n.06

No. 18-5614

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>CHAD H. PRODOEHL,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

**FILED**
Oct 16, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE:     MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  After a jury convicted defendant Chad H. Prodoehl of conspiracy to distribute a controlled substance (carfentanil) that resulted in death, the district court sentenced him to serve 300 months in prison.  On appeal, Prodoehl raises three challenges to the validity of his conviction.  He first alleges reversible error in the failure of the district court to instruct the jury on the concept of withdrawal from a conspiracy.  He next contends that his punishment should not have been enhanced due to the death of another individual because the jury convicted him only of conspiracy to distribute a controlled substance— a crime that was complete "upon the agreement" that was the basis of the conspiracy.  Finally, Prodoehl alleges that various statements made during the prosecution's closing argument were improper, including some that allegedly impugned the integrity of defense counsel.  We find no merit to any of the allegations raised by Prodoehl and thus affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant to this appeal, Prodoehl was housed in the Boone County (Kentucky) Work Camp while serving a sentence for various burglary and theft convictions. Nevertheless, because he was eligible for work release, he was permitted to leave the camp on weekdays and on Saturday mornings to travel in his own vehicle to work at Prodoehl Construction, a family business operated by his father. Prodoehl admitted that he often returned to the work camp with "candy bars, little fun-sized candy bars in packs of eight, hygiene products, toothbrush, toothpaste, soap, shampoo" that he would sell to other inmates. Even though introduction of such items by an inmate was not allowed, the guards would inspect the items upon Prodoehl's return and allow him to bring the goods into the camp, joking and "say[ing] that [he] can bring this stuff in as long as [he] g[a]ve them a candy bar."

According to testimony accredited by the jury at Prodoehl's trial, Prodoehl and two other inmates—Gordon Wanser and Johnny Shelton—discussed having Prodoehl, while away from the camp on work release, meet with a contact known to Shelton in order to obtain heroin and crack cocaine to bring back to the camp with him. Prodoehl did in fact meet with Shelton's drug source, Terrill (Cuzo) Hill, in Cincinnati and drove around the city with him while Hill procured the requested drugs. Prodoehl then wrapped the drug package in plastic wrap and blue tape and concealed it in the front of his pants as he returned to the camp. Once inside the camp, Prodoehl gave the package to Shelton in exchange for a payment of $40.

Later, Wanser purchased from Shelton two grams of crack cocaine and a gram of what Wanser believed was heroin but actually was carfentanil. Wanser, an admitted heroin user, injected himself with the carfentanil and experienced such a strong reaction to the drug that he vomited and collapsed in the work camp bathroom. Upon recovering, he and Timothy Marcum

then "sniffed a line of [the carfentanil] together." Tragically, shortly thereafter, Marcum died from what subsequently was diagnosed as acute carfentanil intoxication.

Prodoehl, Shelton, Hill, and Wanser were indicted for conspiring to distribute and conspiring to possess with intent to distribute carfentanil, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, with Prodoehl's, Shelton's, and Hill's violations alleged to have resulted in the death of an individual. At his trial, Prodoehl did not dispute the fact or the cause of Timothy Marcum's death. He did testify in his own defense, however, that he never brought drugs into the work camp, specifically not the carfentanil that Marcum ingested. Instead, Prodoehl maintained that although he did meet with Hill in Cincinnati and drive him around the city to procure controlled substances, the only drug he received from Hill was marijuana, which Prodoehl later flushed down the toilet at a convenience market on his way back to the work camp. He further claimed that the confession that the authorities extracted from him that implicated him in the drug distribution was coerced and that his subsequent recantation of his inculpatory statements was a true reflection of his lack of involvement in Marcum's death.

The jury, as was its prerogative, chose not to credit Prodoehl's claims of innocence but instead to credit the testimony and evidence put forth by the prosecution through its witnesses. Having done so, the jurors voted unanimously to find Prodoehl guilty of the charged offense. Although the United States Sentencing Guidelines suggested a prison sentence of 360-months-to-life for the crime, the district court varied downward from that advisory range and sentenced Prodoehl to 300 months—25 years—in prison.

**DISCUSSION**

**Challenge to the Denial of a Requested Jury Instruction on Withdrawal from the Conspiracy**

Prior to trial, Prodoehl requested that the district court instruct the jury on the defense of withdrawal from a conspiracy, in accordance with the language contained in Sixth Circuit Pattern Criminal Jury Instruction 3.11A. The district court denied the request, and Prodoehl now asserts that the refusal to give the proposed instruction constituted reversible error because he offered testimony at trial that he had flushed drugs down a convenience store toilet, despite having agreed to procure controlled substances for distribution within the work camp.

We review a district court's refusal to give a requested jury instruction for an abuse of discretion.[1] *See, e.g., United States v. Volkman*, 797 F.3d 377, 385 (6th Cir. 2015). "A refusal to give requested instructions is reversible error only if (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. LaVictor*, 848 F.3d 428, 454 (6th Cir. 2017).

According to Prodoehl, Pattern Criminal Jury Instruction 3.11A correctly informs the finders of fact that a step taken by a defendant "that is inconsistent with the purpose of the conspiracy" and that "is communicated in a way that is reasonably likely to reach the other members" of the agreement, if proven by a preponderance of the evidence, must lead to a verdict of not guilty on a conspiracy charge. *See* Sixth Circuit Pattern Criminal Jury Instruction 3.11A(2)(B) and (3). The district court, however, determined that the requested charge was not

---

[1] The government insists that we should review this allegation only for plain error because Prodoehl did not renew his pretrial request for the jury instruction at the close of trial. No such reiteration of the request for the withdrawal instruction was necessary here, however, because after both the prosecution and the defense had rested their cases, the district court again expressed its view that "withdrawal isn't necessarily a defense to an 846 non-overt act requirement conspiracy."

proper because a Use Note to the pattern instruction states that the "instruction does not appear to be appropriate when the conspiracy charged does not require proof of an overt act."

Prodoehl concedes that a conspiracy charged under 21 U.S.C. § 846 does not require the government to prove that any defendant committed an overt act in furtherance of the conspiracy. Instead, mere agreement among the co-conspirators and knowing participation in the conspiracy are sufficient to establish guilt of the charge. *See, e.g., United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) ("In a § 846 conspiracy, the government must show the willful formation of a conspiracy and the willful membership of the defendant in the conspiracy, but need not prove that defendant committed an overt act in furtherance of the conspiracy."). Nevertheless, Prodoehl offers examples of scenarios in which a person charged with a § 846 conspiracy could withdraw effectively and thus escape conviction.

Recognition of the validity of Prodoehl's argument suggesting the possibility of an appropriate withdrawal from a conspiracy, however, does not lead to the conclusion that the proposed jury instruction should have been given in *this* case. In fact, it is clear from the trial testimony that Prodoehl's proposed withdrawal charge does not fit with the evidence offered by the parties. Specifically, the language of Pattern Criminal Jury Instruction 3.11A unambiguously requires that a withdrawing co-conspirator not only perform "an act that is inconsistent with the purpose of the conspiracy," but also that the act be "communicated in a way that is reasonably likely to reach the other members." *See also United States v. Landers*, 39 F.3d 643, 645–46 (6th Cir. 1994) (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978)). At no time did Prodoehl communicate to Shelton, Wanser, and Hill that he was withdrawing from the conspiracy. Instead, trial testimony was uncontroverted that inmates in the camp awaited Prodoehl's return with drugs from his work stint, that the drugs obtained from Hill were distributed

within the camp, and that Prodoehl received $40 from Shelton for carrying out his duties pursuant to the agreement. Under such circumstances, the district court did not abuse its discretion in choosing not to instruct the jury in accordance with Sixth Circuit Pattern Criminal Jury Instruction 3.11A.

**Challenge to the "Result-in-Death" Element in the Indictment**

Perhaps anticipating the conceptual and evidentiary problems with his first allegation of error, Prodoehl argues for the first time on appeal that the count in the indictment alleging a conspiracy that resulted in the death of Timothy Marcum cannot stand because the charged crime of conspiracy was completed at the time of the agreement among Prodoehl, Shelton, Wanser, and Hill. Alternatively, Prodoehl argues that the government failed to prove that any agreement entered into by the co-conspirators included an understanding that death would result from the criminal actions.

Because Prodoehl failed to raise these challenges to the indictment before the district court, our review of them is for plain error only. *See, e.g., United States v. Armstrong*, 920 F.3d 395, 400 (6th Cir. 2019). Consequently, in order to prevail in this argument, Prodoehl must establish that there was (1) error (2) that was "plain," (3) that affected substantial rights of the defendant, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732–36 (1993).

For purposes of his argument, Prodoehl concedes that a conspiracy in contravention of the provisions of 21 U.S.C. § 846 is considered to be complete upon the agreement of the parties. *See Layne*, 192 F.3d at 567. The fact that criminal liability was established at the moment of agreement does not mean, however, that the co-conspirators also are not liable for subsequent acts undertaken in furtherance of the conspiratorial compact. In fact, the indictment in this matter specifically

alleges that the objectives of the § 846 conspiracy were both to distribute and to possess with intent to distribute carfentanil, a violation of 21 U.S.C. § 841(a) that resulted in Marcum's death. Thus, contrary to Prodoehl's assertions, the sole charge in the indictment in this case did not allege that it was the completed *agreement* to distribute controlled substances that caused Marcum's death. Rather, the charging instrument clearly alleged that it was the *distribution* of the carfentanil—the stated objective of the agreement—that resulted in the death. As argued by the government in its appellate brief, Prodoehl was subject to the "death-results enhancement" of 21 U.S.C. § 841 not because he entered into a conspiracy with other individuals to distribute carfentanil, but "because death resulted from use of carfentanil *he* distributed" in furtherance of that conspiracy.

Nor is the fact that Prodoehl did not envision that anyone would die from the drugs he introduced into the work camp sufficient to exonerate him from the sentence enhancement. The district court correctly instructed the jury in accordance with Sixth Circuit precedent and Sixth Circuit Pattern Criminal Jury Instruction 14.02B(2)(C) that "[i]n order to establish that a death resulted from [d]efendant's conduct, the government need not prove that the death was foreseeable to the defendant." *Volkman*, 797 F.3d at 392.

The indictment in this case and the instructions to the jury on how to evaluate the charge in the indictment comported with circuit precedent and pattern jury instructions. Under such circumstances, we cannot conclude that the district court committed plain error in approving the jury's verdict of guilt on the charge of conspiracy to distribute a controlled substance that caused the death of another individual.

**Challenge to the Propriety of the Government's Closing Argument**

In his final issue on appeal, Prodoehl contends that portions of the closing arguments by the prosecutor were so improper as to constitute violations of the Due Process Clauses of the Fifth

and Fourteenth Amendments to the United States Constitution.  Specifically, Prodoehl suggests that some comments offered by the government improperly insinuated not only that the defendant fabricated testimony, but also that defense counsel played a major role in formulating the statements made by Prodoehl at trial.

The federal courts have "recognized that prosecutorial misconduct may so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process."  *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal quotation marks omitted).  *See also United States v. Crumpton*, 824 F.3d 593, 618 (6th Cir. 2016).  Even so, "[w]e afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole." *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).  Thus, when addressing allegations of prosecutorial misconduct during closing argument, we employ a two-step analysis:

> [W]e first determine whether the challenged statements made by the prosecutor were improper.  If the statements were improper, we then determine whether they constituted flagrant misconduct.  To determine whether a prosecutor's remarks constituted flagrant misconduct, we assess (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*United States v. Bradley*, 917 F.3d 493, 505 (6th Cir. 2019) (citations and internal quotation marks omitted).

Because defense counsel did not raise an objection to the government's closing argument at trial, however, we examine Prodoehl's allegation of prosecutorial misconduct for plain error only.  *See, e.g., Armstrong*, 920 F.3d at 400.  Even employing such deferential review, we still may reverse a conviction if such misconduct is "exceptionally flagrant."  *United States v. Carroll*, 26 F.3d 1380, 1385 n.6 (6th Cir. 1994).

Of the seven comments made by the prosecution during closing argument that Prodoehl claims meet that exceptionally-flagrant threshold, four cannot even be considered improper, much less flagrant. For instance, anticipating that the defense might argue that portions of a taped interrogation that were not played for the jury might hide coercive tactics that could render an inculpatory statement inadmissible, the government explained, "You heard every portion of that recording that the defense wanted to play." Far from intimating that defense counsel was attempting to withhold important information from the finders of fact, the prosecution's argument informed the jury that nothing that would call the police procedures into question occurred during the interrogation. Such an explanation does not come close to crossing the line into impropriety.

Prodoehl suggests that two other comments made during closing argument constituted improper personal attacks on or opinions of defense counsel—statements that "ha[ve] no place at trial." *See United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996). In both instances, the prosecutor made reference to cross-examination techniques utilized by defense counsel, and although arguing that the tactics did not prove Prodoehl's innocence of the charged offense, the prosecutor did mention that defense counsel simply was providing zealous representation for his client.[2] Clearly, such argument is not improper.

---

[2] These two segments of the government's argument to the jury included the following statements:

--- [T]he closest thing we saw to a coercive interrogation technique was during Mr. Schneider's cross-examination of Officer Stidham and of Gordon Wanser. And don't get me wrong, he wasn't doing anything wrong. He was doing his job, and he was doing it well. He showed that he was angry. He disagreed with what was being said. He was yelling and saying you were just lying, you were doing this, you were tricking him. That's Mr. Schneider doing his job. There's nothing wrong with it.

--- "This business about [co-conspirator Shelton's wife] being a visitor that day and that she could have smuggled [the drugs] in during visitation simply doesn't hold up. It's the work of a very good lawyer pointing out something in the evidence that he thinks he can use to help his client."

Likewise, the government did not engage in improper argument in commenting on the defendant's demeanor on the witness stand. In attempting to persuade the jury to discredit Prodoehl's claims of innocence, the prosecutor stated, "He looked at you when he was talking about his family and his sobriety, but he wouldn't look at you when he was lying about not bringing in the drugs. He would turn away, look at his lawyer." Nothing in such an observation can be construed as impugning the integrity of defense counsel.

Three other statements made by the government during closing argument possibly could be construed as improper suggestions that Prodoehl's counsel played a part in fabricating a defense. In relevant part, the prosecution argued:

> And when [Prodoehl] found out that lie wasn't going to work, when his lawyer said, hey, in federal court, as long as you knew it was any kind of drug, you're guilty, then he told a different lie. Oh, I was flushing it down.

> He never [mentioned that he was in fear when he met Hill in Cincinnati]. He never even said it two months later, when he met his lawyer and came up with the "flushing it down the toilet" defense.

> When his lawyer told him that [Prodoehl's claim that he didn't know what kind of drugs he was receiving from Hill] wouldn't work, he went to "I flushed it away. And oh, by the way, the guy had a gun."

Even these statements, however, do not meet our circuit's definition of flagrantly erroneous argument. First, although the government did, on three occasions, tie a change in Prodoehl's story to a consultation with defense counsel, a close reading of the statements indicates that they were neither misleading nor prejudicial. In each instance, the prosecutor made clear that it was *Prodoehl*, not the defense attorney, who chose to alter the thrust of the defense. Moreover, that change followed competent advice by trial counsel regarding the state of the law regarding the conspiracy charge.

Although the government appropriately concedes that the remarks were made deliberately by the prosecutor, those three statements made during the course of a three-day trial hardly can be

considered "extensive." Furthermore, the evidence amassed against Prodoehl was strong, with only the defendant's own denial of culpability offered to rebut the testimony of the government's witnesses.

In short, and especially in light of the applicable standard governing our review of this issue, we cannot conclude that, even if improper, the highlighted statements made by the prosecution during closing argument were so flagrant as to necessitate a new trial. We thus find Prodoehl's allegation of prosecutorial misconduct to be without merit.

## CONCLUSION

For the reasons set out in this opinion, we find no merit to the allegations of error advanced by Prodoehl. We thus AFFIRM the judgment of the district court in its entirety.