FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

RANDLE RAYMOND LOCKETT,

Petitioner - Appellant,

v.

JANET DOWLING, Warden,

Respondent - Appellee.

No. 22-5027
(D.C. No. 4:19-CV-00046-GFK-JFJ)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

Petitioner Randle Raymond Lockett, a prisoner in Oklahoma state custody

proceeding pro se,[1] seeks a certificate of appealability ("COA") to challenge the district

court's dismissal of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Because

reasonable jurists could not debate the proposition that Mr. Lockett has failed to

demonstrate a substantial showing of the denial of a constitutional right based on

ineffective assistance of counsel or prosecutorial misconduct, we deny a COA and

dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. Lockett is proceeding pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## I.  BACKGROUND

On September 21, 2013, Mr. Lockett shot and killed Charles Johnson at the McKinley Apartments in Tulsa, Oklahoma. The night prior, Mr. Lockett was partying at his friend Amanda "Sheila" Gilstrap's apartment. At the request of party attendees, Mr. Johnson went to Ms. Gilstrap's apartment to sell drugs on two separate occasions that night. During Mr. Johnson's second visit to the apartment, Mr. Lockett pawned a necklace for fifty dollars' worth of crack cocaine, with the expectation that Mr. Johnson would return the necklace for payment in cash the next day.

When the time came for Mr. Johnson to return Mr. Lockett's necklace, however, Mr. Johnson would not answer Mr. Lockett's telephone calls. Mr. Lockett then enlisted Ms. Gilstrap, who called Mr. Johnson and told him that Mr. Lockett wanted to buy more drugs and to get his necklace back. Mr. Johnson agreed but told Ms. Gilstrap the price of the necklace had increased, and it would now cost Mr. Lockett $300 to get it back.

Mr. Johnson arrived at the McKinley Apartments about thirty minutes after Ms. Gilstrap's call and proceeded up the stairs to her apartment. Mr. Lockett was waiting in his car when Mr. Johnson arrived. Mr. Lockett ran up the stairs after Mr. Johnson, hit him in the head with a pistol, and then shot at him multiple times. Mr. Johnson died from a bullet wound to the chest.

According to Mr. Lockett, he shot and killed Mr. Johnson in self-defense. After he hit Mr. Johnson in the head with the pistol, Mr. Lockett claimed he dropped the gun. As he was attempting to retrieve the pistol, Mr. Lockett asserted Mr. Johnson raised his arm to hit Mr. Lockett with a "little [green] plexiglass vase" full of marbles. ROA Vol. III

2

at 109–10. Mr. Lockett maintained he shot Mr. Johnson in the chest in response. After the first shot, Mr. Lockett admitted Mr. Johnson started running away, but said he continued to shoot at Mr. Johnson in an attempt to get the necklace back.

The State of Oklahoma charged Mr. Lockett with first-degree murder and possession of a firearm by a felon.[2] During the four-day trial, an Oklahoma jury heard testimony from Mr. Lockett and several witnesses, including Ms. Gilstrap and a responding police officer. The court instructed the jury on self-defense and the lesser included offense of first-degree manslaughter. The jury found Mr. Lockett guilty of each charge. Consistent with the jury recommendation, the trial court sentenced Mr. Lockett to life imprisonment with the possibility of parole for the charge of first-degree murder, and ten years imprisonment for the charge of possession of a firearm by a felon, with the sentences to run concurrently.

Mr. Lockett directly appealed his conviction, raising four issues: (1) prosecutorial misconduct during voir dire and closing argument, (2) prejudicial error based on the district court's admission of evidence without proper authentication, (3) ineffective assistance of counsel based on trial counsel's failure to present evidence in support of his theory of self-defense and failure to object to prosecutorial misconduct, and (4) cumulative error. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Mr. Lockett's conviction. The OCCA concluded the prosecutor's challenged voir dire

---

[2] Mr. Lockett was also charged with one count of assault and battery with a dangerous weapon and one count of feloniously pointing a firearm. The State later dismissed these charges.

statements were not improper and further did not prejudice Mr. Lockett's right to a fair trial considering the entire circumstances of the proceedings. It similarly concluded the prosecutor's comments during closing argument were, for the most part, proper. For the one comment it deemed improper—thanking the jury on behalf of the victim—the OCCA concluded Mr. Lockett had failed to demonstrate the comment prejudiced his right to a fair trial. Because the OCCA determined the prosecutor's comments did not deprive Mr. Lockett of a fair trial, it also concluded his trial counsel "was not ineffective for failing to make meritless objections." ROA Vol. I at 283. The OCCA also rejected Mr. Lockett's authentication challenge and cumulative error claim.

Mr. Lockett subsequently filed an application for post-conviction relief in Oklahoma state court. Mr. Lockett raised three claims: (1) failure to prove the charged offenses beyond a reasonable doubt, (2) police misconduct based on the failure to investigate Ms. Gilstrap's apartment, and (3) police misconduct based on the failure to provide the medical examiner with the victim's clothing. The Oklahoma state court construed these claims as raising ineffective assistance of appellate counsel and denied Mr. Lockett's application. *Id.* at 316–28; *see also id.* at 318 (noting "[i]n total, th[is] Application[] raise[s] the proposition that [Mr. Lockett] received ineffective assistance of appellate counsel"). Agreeing with the construction of his post-conviction claims as ineffective assistance of appellate counsel claims, Mr. Lockett appealed the denial of his application to the OCCA. The OCCA affirmed the denial.[3] As to the first claim based on

---

[3] Mr. Lockett subsequently filed a second application for post-conviction relief, claiming new evidence supported his police misconduct argument. The Oklahoma state

sufficiency of the evidence, the OCCA affirmed because Mr. Lockett's arguments did not demonstrate any error in the jury's finding of each element for first-degree murder or its rejection of his self-defense theory. The OCCA next addressed Mr. Lockett's claim based on the failure to search Ms. Gilstrap's apartment, concluding it was "unfounded" where he neither demonstrated the evidence that may have been found had exculpatory value, nor that the police failed to search her apartment in bad faith. *Id.* at 373. As to his third claim, the OCCA concluded Mr. Lockett's contention that testing the victim's clothing would have yielded a favorable result for his defense was based only on speculation and, without more, failed to demonstrate deficient performance on behalf of his appellate counsel.

Turning to the federal courts, Mr. Lockett then filed a pro se habeas petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Oklahoma. Mr. Lockett amended his habeas petition and raised several claims: (1) sufficiency of the evidence supporting his conviction for first-degree murder, (2) police misconduct based on the failure to investigate inside Ms. Gilstrap's apartment, (3) police misconduct based on the failure to provide the medical examiner with Mr. Johnson's clothing, (4) prosecutorial misconduct based on the prosecutor's hypotheticals during voir dire and comments during closing argument, and (5) ineffective assistance of counsel during both his trial and appeal.

---

court denied Mr. Lockett's second application and the OCCA dismissed his subsequent appeal as untimely. Because Mr. Lockett did not raise any claim from his second application in his request for a COA, we do not address it here.

The federal district court concluded the petition should be denied on the merits of each claim. The district court considered the first three claims under the umbrella of Mr. Lockett's fifth claim—ineffective assistance of appellate counsel—because they were exhausted as ineffective assistance claims in his state application for post-conviction relief. The district court then considered the merits of each claim and concluded Mr. Lockett had failed to demonstrate the OCCA's determinations were contrary to, or involved an unreasonable application of, federal law. After considering the remaining claim of prosecutorial misconduct and arriving at the same conclusion, the district court denied Mr. Lockett's petition and denied a COA. Mr. Lockett now seeks a COA from this court as to each of the five claims raised in his habeas petition.

## II.    DISCUSSION

### A.    Standard Governing § 2254 Proceedings and Petitions for a COA

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication . . . to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has adjudicated a federal claim on the merits, a federal court can grant habeas relief only if the petitioner establishes the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Pursuant to § 2254(d)(1), a state-court decision

6

is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state-court decision is an "unreasonable application" of Supreme Court law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. A federal court may not grant relief simply because it concludes in its "'independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly,'" but may grant relief only where "the ruling [is] 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (quoting *Williams*, 529 U.S. at 411); *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)).

Without a COA, we do not possess jurisdiction to review the denial of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Where a district court denies relief on the merits and denies a COA, an appellate court will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.*

7

*McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Mr. Lockett argues he is entitled to a COA because prosecutorial misconduct deprived him of his right to a fair trial and he received ineffective assistance from his trial and appellate counsel. Mr. Lockett raised the prosecutorial misconduct claim on direct appeal before the OCCA and raised the ineffective assistance of counsel claims in post-conviction proceedings. Because the OCCA denied relief on the merits of Mr. Lockett's claims, the district court's review of his claims was subject to AEDPA deference. Liberally construing Mr. Lockett's pro se arguments, we consider each of his claims and conclude that reasonable jurists could not debate the district court's denial of his habeas petition.

### B.    *Analysis*

### 1.    **Prosecutorial Misconduct**

Prosecutorial misconduct rises to the level of a constitutional error when the prosecutor's conduct renders the "petitioner's trial 'so fundamentally unfair as to deny him due process.'" *Littlejohn v. Trammell*, 704 F.3d 817, 837 (10th Cir. 2013) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). We ask two questions to determine whether a defendant's trial was fundamentally unfair because of a prosecutor's comments: (1) were the prosecutor's comments improper, and (2) if so, did the improper comments likely affect the jury's verdict? *United States v. Christy*, 916 F.3d 814, 824 (10th Cir. 2019). This second question requires an "examination of the entire proceedings" in the case, *Donnelly*, 416 U.S. at 643, and the court must take "notice of all

8

the surrounding circumstances, including the strength of the state's case," *Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005). Mr. Lockett argues the prosecutor's comments during voir dire and closing argument were improper and violated his Fourteenth Amendment right to a fundamentally fair trial. We first address Mr. Lockett's claim based on the voir dire hypotheticals before turning to the challenged closing argument comments.

### a.    *Voir dire hypotheticals*

Mr. Lockett argues that three of the prosecutor's hypotheticals and questions during voir dire about malice aforethought, reasonable doubt, and witness testimony created confusion for the jury and were designed to lower the prosecution's burden of proof. We discuss the three hypotheticals in turn.

First, Mr. Lockett argues the prosecutor's hypothetical about a cheating spouse confused the jury as to the difference between first-degree murder and first-degree manslaughter. During voir dire, the prosecutor asked the potential jurors if any of them would shoot a man if they found him in bed with their spouse before explaining, "[t]hat's oftentimes what we call . . . manslaughter, the difference being you became so enraged seeing your wife in bed with another person that you just shot him. You had your gun on your person and you just shot him." ROA Vol. II at 501–03.

Because Mr. Lockett's trial counsel did not object to this hypothetical, the OCCA reviewed the claim for plain error, and found none. The OCCA cited *Thompson v. State*, 169 P.3d 1198, 1209 (Okla. Crim. App. 2007), for the proposition that a prosecutor's hypothetical during voir dire may violate a defendant's right to a fair trial where it is "an

9

effort to get them to commit to any particular verdict based upon hypothetical facts which parallel those expected to be presented at trial." ROA Vol. I at 278–79. Where Mr. Lockett agreed the facts in the prosecutor's cheating spouse hypothetical used during his trial did not "parallel those expected to be presented," the OCCA concluded "there was no plain or obvious error arising from this exchange which affected [Mr. Lockett's] substantial rights." *Id.* at 278–79. The OCCA also rejected Mr. Lockett's argument that this hypothetical prejudiced his trial because it was a misstatement of the law. The OCCA cited federal law for the proposition that "[j]urors are presumed to follow their instructions" and concluded Mr. Lockett did not overcome that presumption. *Id.* at 279 (citing *Blueford v. Arkansas*, 566 U.S. 599, 606 (2012)). We agree Mr. Lockett has not shown the prosecutor's hypothetical misstated the law such that it prejudiced his right to a fair trial. Here, the jury was instructed as to the difference between first-degree murder and the lesser included offense of first-degree manslaughter. Mr. Lockett does not argue these jury instructions were improper or contrary to the prosecutor's cheating spouse hypothetical. Where the OCCA's conclusion affirming on this basis was neither contrary to, nor involved an unreasonable application of, clearly established federal law, reasonable jurists could not debate the district court's denial of this claim. Accordingly, we deny a COA on this claim.

Second, Mr. Lockett argues the prosecutor's hypothetical about witnesses refusing to testify implied there were other witnesses who could vouch for the prosecution's eyewitness, Ms. Gilstrap, but refused to testify. During voir dire, the prosecutor presented the jurors with the following story about a murder at a restaurant:

> There were, they say, a hundred people having chicken [at the restaurant] that night. . . . . And someone shot and killed someone really very close to the window where you pick up your food. It happened with a hundred people around and nobody saw a thing. Multiple [people] refused to testify. No one talked.

ROA Vol. II at 537. The prosecutor explained to the jury, "[w]e call that in the courthouse the no-snitch mentality." *Id.* at 539. He then asked if the jury would fault him if he did not present a witness:

> Ultimately, if I can't get someone to testify, your question is still the same, . . . did the State, prove its case beyond a reasonable doubt? [If] [t]he answer is, yes, [will] you still f[i]nd [him] guilty. . . . [E]ven if you didn't hear from this witness and you're wondering why didn't the State call them. Because I can't tell you, oh, by the way, Judge, so and so is refusing to testify. Here's what he would have said. You're not going to get to hear that. You'll just hear a blank. Will you promise not to hold that blank or that missing piece against me, assuming, obviously, that I prove my case beyond a reasonable doubt[?]

*Id.* at 540–41.

The OCCA generally reviewed this hypothetical along with other challenged voir dire questions, concluding it did not "affect[] [Mr. Lockett's] substantial rights." ROA Vol. I at 279. The OCCA first reasoned the hypothetical was a permissible "attempt by the prosecutor to determine potential biases by the panelists based on issues which would arise in the case." ROA Vol. I at 279. Next, the OCCA determined the hypothetical likely did not affect the verdict because the jurors were properly instructed as to "the factors [they] may consider in evaluating the weight and credibility of testimony," and the prosecutor's hypothetical did not contradict this instruction. *Id.* Based on these considerations the OCCA determined "the record does not reveal plain or obvious error which affected [Mr. Lockett's] substantial rights." *Id.*

11

The district court concluded the OCCA's decision was not an unreasonable application of federal law because the hypothetical, even if improper, did not likely affect the jury's verdict based on the strength of the evidence against Mr. Lockett and the proper instructions provided to the jury. Mr. Lockett has not demonstrated reasonable jurists could debate this conclusion. The State's case against Mr. Lockett was strong. As the district court recognized, Mr. Lockett did not dispute that he shot Mr. Johnson and argued instead that the shooting was justified. He further did not dispute that he and Mr. Johnson had a disagreement about a necklace, he followed Mr. Johnson up to Ms. Gilstrap's apartment, and he hit Mr. Johnson with a pistol. Moreover, the court properly instructed the jury as to how they should evaluate the credibility of the witnesses and that they should consider only evidence introduced at trial to make that determination.[4] Mr. Lockett has not shown the voir dire hypothetical about the refusal to testify likely affected the jury's verdict when considering the entire proceedings

---

[4] The jury instruction as to witness credibility stated,

> It is your responsibility to determine the credibility of each witness and the weight to be given the testimony of each witness. In determining such weight or credibility, you may properly consider: the interest, if any, which the witness may have in the result of the trial; the relation of the witness to the parties; the bias or prejudice of the witness, if any has been apparent; the candor, fairness, intelligence, and demeanor of the witness; the ability of the witness to remember and relate past occurrences, the means of observation, and the opportunity of knowing the matters about which the witness has testified. . . .

ROA Vol. III at 463. The jury was also instructed to "consider only the evidence introduced while the court is in session," *id.* at 466, and that "[a]rguments of counsel are not evidence in the case," *Id.* at 506.

including the strength of the State's case against Mr. Lockett and the proper jury instructions related to witness credibility. Accordingly, reasonable jurists could not debate the district court's denial and we deny a COA on this claim.

Last, Mr. Lockett argues the prosecutor used a jigsaw puzzle hypothetical to lower the State's burden of proof. During voir dire, the prosecutor posed the following hypothetical to potential jurors after describing a jigsaw puzzle with no reference picture and several pieces missing:

> The puzzle appears to be complete except right in the middle where you see from around the jungle . . . a big hairy golden mane. You see a golden fur of a body. You see a big golden tail. He appears to be standing on a rock in a very manly jungle scene, but you just don't have the snout. Could you try to make out what that is?

ROA Vol. II at 530. Comparing this hypothetical to "a homicide case," the prosecutor told the jury, "I will always have a missing piece. I cannot give you the testimony of a person who died, period, so you're always going to have one or two pieces of that lion missing." ROA Vol. II at 531–32. The OCCA evaluated this claim along with other voir dire hypotheticals, explaining it was also used as "an attempt by the prosecutor to determine potential biases by the panelists based on issues which would arise in the case." ROA Vol. I at 279. The OCCA determined this use was permissible and the hypothetical did not prejudice Mr. Lockett's trial because the jury was properly instructed as to the prosecutor's burden of proof.

The district court concluded the OCCA's application was not unreasonable because, even if the hypothetical was improper, Mr. Lockett had not shown his trial was prejudiced by it. The district court compared the jigsaw puzzle hypothetical here with a

13

hypothetical at issue in *United States v. Bradley*, 917 F.3d 493 (6th Cir. 2019). There, the Sixth Circuit considered a prosecutor's hypothetical of a jigsaw puzzle with missing pieces to describe the beyond a reasonable doubt standard. *Id.* at 507–08. The prosecutor in *Bradley* told the jurors, "if you can look at the parts of the puzzle that you have and say that the picture, right, using your reason and your common sense, the picture being the indictment, has been assembled before you, you can find the defendants guilty as charged." *Id.* at 508. Although the Sixth Circuit concluded this hypothetical was improper because "jurors could understand the metaphor to describe a far less demanding standard of proof than true proof beyond a reasonable doubt," the court ultimately determined the metaphor did not prejudice the defendant's right to a fair trial because: (1) the prosecutor did not intentionally "mislead jurors with it," (2) the prosecutor used the metaphor in one isolated instance, (3) the state's case was strong, (4) the petitioner failed to object to the metaphor, and (5) the trial court properly instructed the jury as to the state's burden of proof and the beyond a reasonable doubt standard. *Id.* Comparing these reasons to the jigsaw hypothetical at hand, the district court concluded it did not likely affect the jury's verdict for six similar reasons: (1) the prosecutor used the analogy to explain that the jury would not hear from the victim, (2) the prosecutor used the hypothetical only during voir dire, (3) the evidence presented against Mr. Lockett was strong, (4) trial counsel did not object, (5) the jury instructions included the requirement that the prosecution prove the case beyond a reasonable doubt, and (6) the hypothetical did not depict Mr. Lockett as a lion. "Based on the entire record, [the district court] f[ound] ample support for the OCCA's conclusion that [Mr.] Lockett failed to show he

14

was denied a fundamentally fair trial from the prosecutor's challenged comments." ROA Vol. I at 568 (internal quotation marks and brackets omitted).

In his request for a COA, Mr. Lockett has not shown how the prosecutor's jigsaw hypothetical likely affected the jury's verdict. The evidence presented against Mr. Lockett was strong, the prosecutor used this hypothetical only briefly in voir dire, Mr. Lockett's trial counsel did not object,[5] and the jury was properly instructed as to the prosecutor's burden to prove each element beyond a reasonable doubt. Considering all these factors, reasonable jurists could not debate whether the prosecutor's jigsaw puzzle hypothetical compromised the fundamental fairness of Mr. Lockett's trial or that the claim warrants further encouragement. We deny a COA on this claim.

b.    *Comments during closing argument*

During closing argument, the prosecutor started by thanking the jury "on behalf of Mr. Johnson's family and the State of Oklahoma." ROA Vol. III at 222. Later in its argument, the prosecutor asked the jury to not "settle on manslaughter," rather than first-degree murder "for Mr. Johnson's sake." *Id.* at 234. The OCCA concluded these comments were improper. But it ultimately did not find any plain error because Mr. Lockett "fail[ed] to show [the comments] affected his substantial rights." ROA Vol. I at 280. The district court agreed with the OCCA and concluded Mr. Lockett had failed to demonstrate prejudice based on these improper comments. The district court concluded

---

[5] We have noted a trial "[c]ounsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002).

the error resulting from the prosecutor's statements did not likely affect the verdict after examining the entirety of the proceedings, including the strength of the evidence against Mr. Lockett, the proper instructions provided to the jury, and the lack of objection by Mr. Lockett's trial counsel. Here, Mr. Lockett has failed to show that the prosecutor's comments were significant enough to cause the jury to base its verdict on sympathy rather than reason. *See DeRosa v. Workman*, 679 F.3d 1196, 1233–34 (10th Cir. 2012) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)) (rejecting a prosecutorial misconduct claim based in part on a prosecutor "thanking the jury on behalf of the victims' family"). Accordingly, reasonable jurists could not debate the district court's denial of this claim. We therefore deny a COA.

Mr. Lockett next argues he was denied a fair trial due to the prosecutor's comments during closing argument calling Mr. Lockett a liar. According to Mr. Lockett, the comments implicated his presumption of innocence and shifted the burden to him to prove self-defense. In closing, the prosecutor recounted Mr. Lockett's inconsistent statements to the police and during his testimony. The prosecutor then directed the jury's attention to the jury instruction for evaluating evidence of Mr. Lockett's inconsistent statements and argued,

> Instruction 18: Evidence has been presented at trial that the defendant made a statement inconsistent with his testimony in this case. This is called impeachment evidence, and it's offered to show that defendant's testimony is not believable or truthful.

> Nowhere in the Instruction 18 or anywhere in the 52 instructions that you have will it say any of the State's witnesses are inconsistent, period. The defendant is the only person since September of 2013 that has made an inconsistent statement. His statement is a lie, ultimately.

16

ROA Vol. III at 233. When recounting the two different versions of events described during trial, the prosecutor said,

> I'll tell you this, in order to say that [Mr. Lockett is] telling the truth in his [testimony], you have to think that [Ms. Gilstrap] is completely lying when the defendant is the only person that has been shown to be a liar by the instructions.

ROA Vol. III at 236.

The OCCA reviewed these comments for plain error because Mr. Lockett's trial counsel did not object to either. Where the prosecutor's comments "were based on the record evidence and reasonable inferences from it," the OCCA concluded Mr. Lockett "fail[ed] to show an actual error which is plain or obvious which affected his substantial rights." ROA Vol. I at 281. Although referring to a defendant as a "liar" is often "unnecessary" and "unwarranted," *United States v. Nichols*, 21 F.3d 1016, 1019 (10th Cir. 1994), we have held that labeling testimony as a lie is not per se prosecutorial misconduct, *United States v. Robinson*, 978 F.2d 1554, 1567 (10th Cir.1992). Instead, prosecutors may comment on the veracity of a defendant's version of events. *See United States v. Hernandez–Muniz*, 170 F.3d 1007, 1012 (10th Cir.1999). We have "rejected claims of prosecutorial misconduct where the prosecution referred to a defendant as a liar on account of irreconcilable discrepancies between the defendant's testimony and other evidence in the case." *Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006). Because such a discrepancy was present here, the prosecutor's statements that Mr. Lockett is a liar were not improper. Accordingly, Mr. Lockett has failed to show that the OCCA

17

unreasonably applied clearly established federal law, and reasonable jurists could not debate the district court's denial of this claim. We deny a COA on this claim.

## 2.    Ineffective Assistance of Counsel

Mr. Lockett seeks a COA on claims stemming from the alleged ineffective assistance of his trial and appellate counsel. To demonstrate that his Sixth Amendment right to the effective assistance of counsel was violated, Mr. Lockett "must show both that counsel's performance 'fell below an objective standard of reasonableness' and that 'the deficient performance prejudiced the defense.'" *Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "To be deficient, the performance must be 'outside the wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). "As for the prejudice prong, the defendant must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted). Our review of the state court's decision on these claims is subject to the deferential AEDPA standard of review. *Woods v. Etherton*, 578 U.S. 113, 116 (2016) (per curiam).

### a.    Trial counsel

Mr. Lockett argues he received ineffective assistance of counsel in violation of the Sixth Amendment based on his trial counsel's failure to object to the voir dire hypotheticals and closing argument comments addressed in the previous section.[6] The

---

[6] Mr. Lockett also seems to raise an argument as to his ineffective assistance of trial counsel based on their "ignorance of the self-defense theory." Aplt. Br. and COA

OCCA applied the *Strickland* standard and concluded Mr. Lockett had failed to state a claim for ineffective assistance of trial counsel based on the first prong, i.e., deficient performance. Because the OCCA determined none of the challenged conduct amounted to prosecutorial misconduct, it concluded Mr. Lockett's trial counsel "was not ineffective for failing to make meritless objections." ROA Vol. I at 283. The district court denied habeas relief based on the second prong of the *Strickland* standard, concluding that Mr. Lockett had failed to demonstrate how the result of his trial would have been different had his trial counsel objected and made a record on the grounds of the voir dire hypotheticals and closing argument comments. As an initial matter, we note that the OCCA's decision is internally inconsistent because it earlier concluded some of the prosecutor's comments were improper and an objection from Mr. Lockett's trial counsel would not be "meritless" if he had objected to these improper comments. ROA Vol. I at 280 (noting "[t]he prosecutor erred when he thanked the jury during closing argument on behalf of the victims"). Nevertheless, as described in the previous section, reasonable jurists could not debate that Mr. Lockett has failed to show prejudice based on the alleged prosecutorial misconduct. Where the statements themselves did not likely affect the verdict, Mr. Lockett has not shown the result of his trial would have been different had his trial counsel objected to the statements. "We need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant fails to make a sufficient showing

at 8–9. But he has waived this argument by failing to assert it in his district court habeas petition. *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) (noting petitioners waive issues "by failing to assert them in [their] district court habeas petition").

of one." *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (internal quotation

marks omitted). Because Mr. Lockett has not shown a Sixth Amendment violation based

on trial counsel's failure to object to the prosecutor's hypotheticals and comments, the

OCCA did not unreasonably apply *Strickland*, and reasonable jurists could not debate the

district court's denial of this claim, we deny a COA.

     b.     *Appellate counsel*

When considering a claim of ineffective assistance of appellate counsel, "[t]he

very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the

merits of omitted issues." *Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014) (internal

quotation marks omitted). Mr. Lockett claims his appellate counsel was ineffective for

failing to raise a claim challenging: (1) the sufficiency of the evidence against him

presented at trial, (2) police misconduct based on the failure to search Ms. Gilstrap's

apartment, and (3) police misconduct based on the failure to provide the medical

examiner with the victim's clothing.[7] We address each argument in turn.

---

[7] Mr. Lockett argues he is entitled to a COA because the district court applied the incorrect legal standard to evaluate his police misconduct claims. He maintains the district court should have reviewed these claims under the standard articulated in *Brady v. Maryland*, 373 U.S. 83 (1963), rather than construing the claims as ineffective assistance of appellate counsel claims and reviewing them under the *Strickland* standard. The district court correctly construed Mr. Lockett's police misconduct claims in his habeas petition as ineffective assistance of appellate counsel claims because Mr. Lockett has exhausted the claims as ineffective assistance of appellate counsel claims. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992) (noting exhaustion requires a showing that "a state appellate court has had the opportunity to rule on the same claim presented in federal court"). When reviewing his application for post-conviction relief, the state court liberally construed his police misconduct claims as ineffective assistance of counsel claims instead of concluding the claims were procedurally barred because he did not raise the issues on direct appeal. *See Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App.

i.    Sufficient evidence

Mr. Lockett asserts his appellate counsel was ineffective by failing to raise a claim

that the State did not meet its burden to prove the elements for first-degree murder. The

OCCA concluded the State presented a prima facie case of first-degree murder and

Mr. Lockett's self-defense claim was a factual issue for the jury. Because he did not

argue or demonstrate any error in the jury's verdict, the OCCA concluded his sufficiency

of the evidence claim was meritless. In arriving at this conclusion, the OCCA relied on

the sufficiency of the evidence standard articulated in *Baird v. State*, 400 P.3d 875 (Okla.

Crim. App. 2017). *Baird* applies the federal standard to state a claim for a violation of the

Fourteenth Amendment's Due Process Clause based on insufficient evidence by asking

"whether any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Baird*, 400 P.3d at 884; *see also Jackson v. Virginia*,

443 U.S. 307, 317–18 (1979) (concluding a state conviction violates the Fourteenth

Amendment "when it can be said that no rational trier of fact could find guilt beyond a

reasonable doubt"). Applying this standard, the OCCA concluded the State presented a

prima facie case of first-degree murder and "[w]hether [Mr. Lockett] was the aggressor or

was acting in self-defense was . . . a question for [his] jury." ROA Vol. I at 371. Because

---

2013) (noting "issues that were not raised previously on direct appeal, but which could
have been raised, are waived for further review" but that "[c]laims of ineffective
assistance of appellate counsel may be raised for the first time on post-conviction,
because it is usually a petitioner's first opportunity to allege and argue the issue.").
Mr. Lockett relied on this construction of his claims when appealing to the OCCA.
Accordingly, Mr. Lockett's police misconduct claims were exhausted only as ineffective
assistance of appellate counsel claims and appropriately reviewed by the district court
under the *Strickland* standard.

Mr. Lockett did not argue there was an error in the jury's verdict, the OCCA concluded "he cannot show his appellate counsel was ineffective for not raising a sufficiency-of-the-evidence claim on direct appeal." *Id.*

After reviewing the evidence presented by the State at trial, the district court concluded there was "sufficient evidence . . . adduced at trial to support the OCCA's findings." *Id.* at 554. Because the OCCA's conclusion that the State presented a prima facie case of first-degree murder was not unreasonable, the district court further determined Mr. Lockett could not meet the first *Strickland* prong. *Id.* We agree Mr. Lockett has not made the required showing to demonstrate his appellate counsel was ineffective for not raising a sufficiency of the evidence claim on appeal. As detailed by the district court, the State presented sufficient evidence to permit a jury to find each of the essential elements of first-degree murder beyond a reasonable doubt. *See* ROA Vol. I at 553–54 (noting the record demonstrated "[Mr.] Johnson came to [Ms.] Gilstrap's apartment per her request, but when he arrived, [Mr.] Lockett ran up the stairs, hit [Mr.] Johnson over the head with the gun, and then fired at [Mr.] Johnson as he ran away" and "Johnson was shot once and died of a gunshot wound"). Without an adequate demonstration of both *Strickland* prongs, Mr. Lockett has not shown a Sixth Amendment violation. *Hollis*, 552 F.3d at 1194. Because the OCCA did not unreasonably apply *Strickland*, and reasonable jurists could not debate the district court's denial, we deny a COA on this claim.

22

ii.    Police misconduct based on the failure to investigate

Next, Mr. Lockett argues his appellate counsel was ineffective for failing to raise a

claim for police misconduct based on the failure to obtain a search warrant allowing a

search of Ms. Gilstrap's apartment for signs of a struggle, blood splatter, or other DNA

evidence to support his theory of self-defense. Relying on *Cuesta-Rodriguez v. State*,

241 P.3d 214, 425 (Okla. Crim. App. 2010), the OCCA concluded Mr. Lockett's "claim

of police misconduct" based on the failure to search Ms. Gilstrap's apartment "is

unfounded." ROA Vol. I at 373. The case cited by the OCCA applies the standard to

demonstrate a violation of the Due Process Clause of the Fourteenth Amendment based

on the failure to preserve evidence articulated in *California v. Trombetta*, 467 U.S. 479

(1984) and *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988), stating:

> The State has a duty under the Due Process Clause of the Fourteenth
> Amendment to preserve evidence that might be expected to play a
> significant role in the suspect's defense. Such evidence "must both possess
> an exculpatory value that was apparent before the evidence was destroyed,
> and be of such a nature that the defendant would be unable to obtain
> comparable evidence by other reasonably available means." . . . "Unless a
> defendant can show bad faith by the police, destruction of potentially useful
> evidence does not constitute a due process violation."

*Cuesta-Rodriguez*, 241 P.3d at 225 (quoting *Trombetta*, 467 U.S. at 488–89 and *Torres v.*

*State*, 962 P.2d 3, 13 (Okla. Crim. App. 1998) (citing *Youngblood*, 488 U.S. at 58)). The

OCCA concluded Mr. Lockett failed to demonstrate that any of the evidence that "might

have been found within the apartment" met this standard. ROA Vol. I at 373. Because it

concluded Mr. Lockett's police misconduct claim was meritless, the OCCA determined

his appellate counsel was not ineffective for failing to raise it. The district court

23

concluded the OCCA did not unreasonably apply federal law, noting one of the responding officers testified about the condition of Ms. Gilstrap's apartment shortly after the incident, stating the apartment "was clean, put together. It didn't appear that anything was disturbed. The only thing [the officer] noticed was a couch cushion . . . pulled out and kind of cockeyed. Everything else was pushed back." ROA Vol. II at 671. The officer also testified she did not see any signs of a struggle, a green plexiglass vase, or broken glass. *Id.* at 671–72. We agree Mr. Lockett has neither made the required showing that the evidence in Ms. Gilstrap's apartment had exculpatory value, that he was unable to obtain comparable evidence by other means, nor that the police failed to search Ms. Gilstrap's apartment in bad faith. He therefore cannot establish the first prong of *Strickland*. Thus, the OCCA did not unreasonably apply the federal standard and reasonable jurists could not debate the district court's denial of this claim. Accordingly, we deny a COA on this claim.

### iii.    Police misconduct based on the victim's clothing

Mr. Lockett claims his appellate counsel was ineffective for failing to raise a claim of police misconduct because the police did not provide the medical examiner with the victim's clothing to test for gun powder residue. If provided with the clothing, Mr. Lockett argues, the medical examiner could have determined how close Mr. Johnson was to Mr. Lockett when he fired the first shot. He further maintains this determination would have supported Mr. Lockett's claim of self-defense. The OCCA concluded Mr. Lockett's "speculat[ion] that testing would have yielded a result beneficial to his defense . . . d[id] not meet [his] burden to show that he suffered prejudice from his

24

counsel's alleged deficient performance." ROA Vol. I at 368–69. Mr. Lockett does not demonstrate how the distance between Mr. Johnson and himself would have yielded a different result, especially given Mr. Lockett testified that he instigated the situation by hitting Mr. Johnson with a pistol. Moreover, the jury was presented with testimony supporting Mr. Lockett's theory of self-defense and was provided with proper instructions to determine if the defense was applicable. Because Mr. Lockett has not demonstrated a reasonable probability that but for his appellate counsel's failure to raise a claim of police misconduct based on the lack of testing of the victim's clothing, the result of the proceeding would have been different, we agree with the OCCA. Mr. Lockett has not established the prejudice prong of the *Strickland* standard for his appellate counsel's failure to raise a claim based on this alleged misconduct. Again, "[w]e need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant fails to make a sufficient showing of one." *Hollis*, 552 F.3d at 1194 (internal quotation marks omitted). Because Mr. Lockett has not shown a Sixth Amendment violation, the OCCA did not unreasonably apply *Strickland*, and reasonable jurists could not debate the district court's denial of this claim, we deny a COA.

### III.    CONCLUSION

Because Mr. Lockett fails to make a substantial showing of the denial of a

constitutional right, we DENY his request for a COA and DISMISS this matter.


Entered for the Court


Carolyn B. McHugh
Circuit Judge